UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-80098-CIV-MARRA

ARRIVAL STAR, SA and MELVINO
TECHNOLOGIES LIMITED,

    Plaintiffs,
vs.

DEMANDWARE, INC.,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS**

This cause is before the Court upon Defendant's Motion for Sanctions under Federal Rule of Civil Procedure 11 (DE 17); Plaintiffs' Motion to Strike Redundant, Immaterial, Impertinent and Scandalous Matter from Defendant's Amended Counterclaims (DE 28);  Plaintiffs' Motion to Dismiss Counts IX through XII of Defendant's Amended Counterclaims (DE 29) and Plaintiffs' Motion to Amend Case Caption (DE 37).  The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I. Background

On January 28, 2015, Plaintiffs Arrival Star, SA and Melvino Technologies Limited ("Plaintiffs") filed a two-count Complaint for direct patent infringement (count one) and indirect patent infringement (count two) against Defendant Demandware, Inc. ("Demandware" "Defendant").

Defendant has filed an Answer and Counterclaims against Plaintiffs.  According to the allegations of the Counterclaim, Plaintiffs are non-practicing patent assertion entities ("NPE"), which means they are corporate entities with no real assets, that do not manufacture or market

any products but own a portfolio of intellectual property and seek to generate license fees from alleged patent infringers. Usually the proposed license amount offered by NPEs to a defendant they sue is modest in comparison to the legal fees required to defend the suit.  (Counterclaim ¶ 9.)  Plaintiffs have filed over 440 patent infringement lawsuits over the past eight years, and upon information and belief, "hundreds, if not thousands" of defendants have received threatening demand or cease and desist letters from Plaintiff regarding the patents-in-suit. (Counterclaim ¶ 10.)

Upon information and belief, Plaintiffs have created a business model around knowingly filing frivolous and meritless complaints of patent infringement against businesses, municipalities and individuals with de minimis or no pre-filing investigation, claim chart preparation, comparison of the accused products or services to patent claims. (Counterclaim ¶ 11.)  Plaintiffs have filed "copycat complaints" against multiple defendants. (Counterclaim ¶ 12.)

Upon information and belief, Plaintiffs have created a business model with a malicious intent to extort a substantial amount of money from the accused defendants as a settlement or license fee which is substantially less than the average cost of hiring an attorney. (Counterclaim ¶ 13.)

Anthony E. Dowell, an attorney who filed and managed more than 120 cases on behalf of ArrivalStar and Melvino between February 2008 and May 2013 has stated that in the cases he handled for Plaintiffs, he was able to successfully license the ArrivalStar patents to over 300 companies, generating over $15 million in revenue for ArrivalStar for an average license fee of approximately $50,000.00. (Counterclaim ¶ 14.)

Upon information and belief, Plaintiffs have filed a complaint for patent infringement

with full and actual knowledge of non-infringement on behalf of the defendants they sued. (Counterclaim ¶ 15.)

Plaintiffs have asserted patents against entities practicing technologies far afield from the patented technology. The patent-in-suit concerns technology for monitoring and reporting the status of a vehicle and methods and systems for vehicle status reporting systems. (Counterclaim ¶ 16.)

Defendant is a Massachusetts-based software technology company that provides a cloud-based e-commerce platform and related services for retailers and brand manufacturers. Defendant does not make, use or sell any of the vehicle status reporting systems that are the subject of Plaintiffs' patents.  (Counterclaim ¶ ¶ 17, 109.)

A large proportion of companies in e-commerce industry targeted by Plaintiffs, including Defendant's customers, ship products using carriers that have portfolio licenses for Plaintiffs' patents. (Counterclaim ¶ 18.)   Defendant's customers ship and track packages through carriers that are already licensed to Plaintiffs' patents. (Counterclaim ¶ 19.)

Defendant brings a twelve-count Counterclaim for declaratory judgment of non-infringement (counts one-four), declaratory judgment of patent invalidity (counts five-eight), combination and conspiracy in restraint of trade (count nine), a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1862 (count ten), unenforceability of U.S. Patent for Prosecution Laches (count eleven) and unfair and deceptive practices in violation of Massachusetts General Law Ch. 93A (count twelve).

Plaintiffs move to dismiss counts nine through twelve of the Counterclaim, claiming that the Counterclaims are inadequately based on the allegations that Plaintiffs file numerous cease

and desist letters and lawsuits and seek nuisance-value settlement/license fees.  Plaintiffs also move to strike from the Counterclaims allegations they consider to be redundant, impertinent and scandalous.  Next, Defendant moves for sanctions pursuant to Rule 11 of the Federal Rule of Civil Procedure, claiming Plaintiffs' attorney failed to conduct a pre-filing investigation.  Lastly, Plaintiffs move to amend the case caption to reflect that the proper plaintiff in this case is "Shipping and Transit, LLC."[1]

    II.  Motion to Dismiss

    A.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a

---

[1] No response to this Motion was filed.

plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### B. Discussion

#### 1.  Sherman Act claim

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C.A. § 1.  "A section 1 plaintiff must prove an agreement between two or more persons to restrain trade, because unilateral conduct is not illegal under section 1." Levine v. Central Florida Med. Affliates, Inc., 72 F.3d 1538, 1545 (11th Cir. 1996).  A claim under this statute must also demonstrate that the agreement unreasonably restrains competition. Id.  Pleading Sherman Act jurisdiction requires that the business activities have a substantial impact on interstate commerce.  Shahawy v. Harrison, 778 F.2d 636, 639 (11th Cir.1985).

Antitrust laws do not take away a patentee's right to exclude others from competing against it by making, selling or offering for sale products that fall within the scope of the patent. Intergraph Corp. v. Intel Corp., 195 F.3d 1346, 1362 (Fed. Cir. 1999).  However, "[w]hen a patent owner uses his patent rights not only as a shield to protect his invention, but as a sword to eviscerate competition unfairly, that owner may be found to have abused the grant and may become liable for antitrust violations when sufficient market power in the relevant market is present." Atari Games Corp. v. Nintendo of America, Inc., 897 F.2d 1572, 1576 (Fed. Cir. 1990).

5

"A patent owner who brings a lawsuit to enforce the statutory right to exclude others from making, using or selling the claimed invention is exempt from the antitrust laws, even though such a suit may have an anticompetitive effect, unless the infringement defendant 'proves (1) that the asserted patent was obtained through knowing and willful fraud . . . or (2) that the infringement suit was a mere sham to cover what is actually no more than an attempt to interfere directly with the business relationships of a competitor." Glass Equipment Development, Inc. v. Besten, Inc., 174 F.3d 1337, 1343 (Fed. Cir. 1999). To establish that "the sham litigation exception" applies, a litigant must show "that: (1) the lawsuit is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; and (2) the party bringing the allegedly baseless suit did so with a subjective motivation to interfere directly with the business relationships of a competitor." Andrx Pharm., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1234 (11th Cir. 2005) (internal quotation marks omitted).

Defendant pleads that Plaintiffs conspired together to engage in a concerted effort to delay and prevent competition in the relevant market which had a direct effect on interstate commerce by limiting and preventing competition. (Counterclaim ¶¶ 85-86.) The Counterclaim alleges that Plaintiffs formed an agreement to threaten companies into either settling or, if the companies refused to settle, filing meritless lawsuits. (Counterclaim ¶ 13.) The Court finds that these allegations are sufficient to establish that the suit is objectively baseless and was filed with the subjective motivation to interfere directly with the business relationship of a competitor. See SecurityPoint Media, LLC v. The Adason Group, LLC, No. 8:07-cv-444-T-24TGW, 2007 WL 2298024, at * 5 (M.D. Fla. Aug. 7, 2007) (allegations that patentee misrepresented patent rights and threatened lawsuits are sufficient to show the suit was objectively baseless and filed with the

subjective motivation to interfere with relationship of a competitor). Whether Defendant can demonstrate that the "sham litigation" exception applies is an issue that presents questions of fact that cannot be resolved on a motion to dismiss.

For these reasons, the motion to dismiss this claim is denied.

2.  RICO claim

In order for a Plaintiff to survive a motion to dismiss a civil RICO case,

> a plaintiff must show a "pattern of racketeering activity" by alleging that the defendants committed two qualifying predicate acts. Republic of Panama v. BCCI Holdings, 119 F.3d 935, 948-49 (11th Cir. 1997). This requires that a plaintiff allege facts that support each statutory element of a violation of one of the state or federal laws described in 18 U.S. C. § 1961(1).

Raney v. Allstate Ins. Co., 370 F.3d 1086,1087 (11th Cir. 2004).

The Court finds the Eleventh Circuit decision in Raney to be dispositive of the issue before the Court. In Raney, the Court held that the filing of a lawsuit, even if done maliciously, cannot form a predicate act under RICO.

In Raney, the RICO claim depended upon the Plaintiff's ability to show a violation of the Hobbs Act, which bars interference in interstate commerce by means of extortion. *See* 18 U.S.C. § 1951. The Eleventh Circuit noted that all of Raney's allegations of mail fraud and extortion related to "the alleged conspiracy to extort money through the filing of malicious lawsuits." 370 F.3d at 1088. The Raney Court noted that this argument was foreclosed by the Eleventh Circuit's decision in United States v. Pendergraft, 297 F.3d 1198 (11th Cir. 2002), where the Court "held that neither the threat to litigate nor the fabrication of evidence behind the lawsuit made the action 'wrongful' within the meaning of 18 U.S.C. § 1951 and therefore could not be a predicate

act under RICO." Id.

The Raney Court made it clear that Pendergraft did not only apply to threats of litigation, but applied with equal force to actual litigation.

> We noted [in Pendergraft] that courts possess adequate procedures to distinguish valid claims from invalid claims and held that Congress did not intend to punish citizens merely for accessing the legal system. . . We found ourselves "troubled by *any* use of this federal criminal statute to punish civil litigants." . . . We noted that "allowing litigants to be charged with extortion would open yet another collateral way for litigants to attack one another." . . .We also expressed concern about transforming every state-law malicious prosecution action into a federal crime. . . .All of these concerns apply to actual litigation with added force.

370 F.3d at 1088 (citations omitted).

The instant case is indistinguishable from Raney, a case overlooked by Defendant. Defendant's allegations that Plaintiffs committed the "predicate crimes" of mail fraud under 18 U.S.C. §1341, wire fraud under 18 U.S.C. § 1343, and extortion under 18 U.S.C. § 1951 and Florida Statute § 836.05, are ultimately dependent upon the threat of filing lawsuits or the actual filing of lawsuits to extort licensing fees. As such, the Court grants the motion to dismiss this claim.

### 3.  Prosecution Laches

"Prosecution laches is an equitable defense to a charge of patent infringement. The doctrine 'may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution' that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances." Cancer Research Tech. Ltd. v. Barr Labs., Inc., 625 F.3d 724, 728 (Fed. Cir. 2010). The requirement of an unreasonable and unexplained delay

also requires a finding of prejudice. Id. at 729. "[T]o establish prejudice an accused infringer must show evidence of intervening rights, i.e., that either the accused infringer or others invested in, worked on, or used the claimed technology during the period of delay." Id.

The Counterclaim alleges that Plaintiffs delayed the prosecution of two patents for 15 years while Defendant invested in and developed technology that became commercially profitable and then sued on the basis that Plaintiffs' patents covered those inventions. (Counterclaims ¶¶ 101-02.)  This Counterclaim states that Defendants were prejudiced by this delay. (Counterclaim ¶ 103.)

The Court finds that Defendants have properly alleged unreasonable delay.  See Seaboard Intern., Inc. v. Cameron Intern. Corp., No. 1:13–CV–00281–MLH–SKO, 2013 WL 3936889 at * 4 (E.D. Cal. July 30, 2013) (alleged delay of six and one half years); Jazz Pharm., Inc. v. Roxane Labs, Inc., No. 2:10–CV–06108–ES–JAD, 2013 WL 6858765, at * 5 (D.N.J. Dec. 30, 2013) (delay properly alleged by claim that patentee delayed filing patent applications for no other purpose but to prolong litigation); see also Symbol Techs., Inc. v. Lemelson Med., 422 F.3d 1378, 1384–85 (Fed. Cir .2005) ( "there are no strict time limitations for determining whether continued refiling of patent applications is a legitimate utilization of statutory provisions or an abuse of those provisions.")

With respect to the prejudice prong of this claim, Defendant have simply provided a formulaic recitation of the prejudice element of this cause of action and therefore it must be re-pled to comply with Twombly.  The facts relied upon by Defendant in their response memorandum are not found in the Counterclaim and therefore cannot be relied upon by the Court.  (DE 34 at 16.)  Defendant is granted leave to amend this count.

9

### 4.  Violation of Massachusetts General Law, Chapter 93A

The Court begins its analysis by looking to the discussion of a Chapter 93A claim by the United States Court of Appeals for the First Circuit:

> A covered party is liable under this statute if it engages in any "unfair or deceptive act or practice." Mass. Gen. Laws. c. 93A §§ 2, 11. To prove such a claim, it is neither necessary nor sufficient that a particular act or practice violate common or statutory law. Because there is no limit to human inventiveness in this field, Massachusetts courts evaluate unfair and deceptive trade practice claims based on the circumstances of each case. In so doing, Massachusetts leaves the determination of what constitutes an unfair trade practice to the finder of fact, subject to the court's performance of a legal gate-keeping function. As is true in other jurisdictions, Massachusetts courts, in considering whether a particular act or practice violates the unfairness prong of Chapter 93A: look to (1) whether the practice is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

<u>Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.</u>, 552 F.3d 47, 69 (1st Cir. 2009) (internal case citations and quotation marks omitted).

Here, the Counterclaim states that Plaintiffs' infringement claims were made in bad faith and were "nothing more than an attempt to leverage the high cost of defending against such claims in hope of obtaining a payment." (Counterclaim ¶ 116.)  Bad faith pre-litigation conduct can constitute a violation Chapter 93A violation.  See <u>SCVNGR, Inc. v. eCharge Licensing, LLC</u>, No. 13–12418–DJC, 2014 WL 4804738, at * 5 (D. Mass. Sept. 25, 2014) (a Chapter 93A claim may be actionable particularly if it involves bad faith pre-litigation conduct by a patent holder).

Defendant, a Massachusetts-based technology company, has also properly alleged that Plaintiffs, by attempting to sell patent licenses, engaged in trade and commerce in Massachusetts.

(Counterclaim ¶¶ 107, 109).  See Mass. Gen. Laws. c. 93A § 1(b) ("'trade' and 'commerce' shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible *or intangible*, real, personal or mixed . . .") (emphasis added); Back Bay Farm, LLC v. Collucio, 230 F. Supp. 2d 176, 188 (D. Mass. 2002) (claim must allege that Plaintiff is located and claims an injury that occurred "primarily and substantially within" Massachusetts).  Finally, Defendants have pled damages by alleging that it incurred attorneys' fees due to Plaintiffs' actions (Counterclaim ¶ 121.)  Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 712 N.E.2d 93, 96 (Mass. 1999) ("If a violation of [chapter 93A] forces another to incur attorney's fees, those fees are a loss of money or property and may be recovered as [ ] damages.")

Thus, the motion to dismiss this claim is denied.

III. Motion to Strike

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter" within the pleadings. Fed. R. Civ. P. 12(f). Motions to strike, however, are generally disfavored by the court.  See Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir.1991). The reason is that courts consider striking a pleading to be a "drastic remedy to be resorted to only when required for the purposes of justice." Augustus v. Bd. of Pub. Instruction of Escambia County, Fla., 306 F.2d 862, 868 (5th Cir.1962)[2] (quoting Brown & Williamson Tobacco Corp. v. United States), 201 F.2d 819, 822

---

[2] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

(6th Cir.1953); <u>Exhibit Icons, LLC v. XP Companies, LLC</u>, 609 F. Supp. 2d 1282, 1300 (S.D. Fla. 2009).

The Court has examined the Counterclaim in its entirety as well as the language highlighted by Plaintiffs as examples of "redundant, immaterial, impertinent, or scandalous matter." After careful review, the Court finds that the Counterclaim does not contain any material barred under Rule 12(f).  Although some of the language in the Counterclaim is strongly worded, the theory behind many of the claims is that Plaintiffs engage in bad faith litigation, thus making this language particularly relevant and related to those claims.   Thus, the Court denies the motion to strike on this basis.

<u>IV. Conclusion</u>

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion for Sanctions under Federal Rule of Civil Procedure 11 (DE 17) is **DENIED WITHOUT PREJUDICE**.  This motion is premature.  Defendant may re-assert this motion once the Court has determined whether the case lacks merit.

2) Plaintiffs' Motion to Strike Redundant, Immaterial, Impertinent and Scandalous Matter from Defendant's Amended Counterclaims (DE 28) is **DENIED**.

3) Plaintiffs' Motion to Dismiss Counts IX through XII of Defendant's Amended Counterclaims (DE 29) is **GRANTED IN PART AND DENIED IN PART**.  Defendant may amend its Counterclaims in accordance with this Order **within 14 days of the date of entry of this Order.**

4) Plaintiffs' Motion to Amend Case Caption (DE 37) is **GRANTED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 6th day of July, 2015.

_____
KENNETH A. MARRA
United States District Judge