UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

SHIPPING AND TRANSIT, LLC,

        Plaintiffs,

    v.

DEMANDWARE, INC.,

        Defendant.

Case No.: 15-cv-80098

Jury Trial Demanded

## DEFENDANT'S SECOND AMENDED ANSWER, DEFENSES AND COUNTERCLAIMS

Pursuant to the Court's July 6, 2015 Order (Dkt. No. 40 at 12) granting Defendant

Demandware, Inc. ("Demandware") leave to amend its counterclaim alleging that U.S. Patent

Nos. 7,400,970 and 6,904,359 are unenforceable for prosecution laches, Demandware, by and

through its undersigned counsel, hereby files this Second Amended Answer, Defenses and

Counterclaims in response to the Complaint of Plaintiff Shipping and Transit, LLC[1] as follows.

Demandware denies each and every allegation contained in the Complaint that is not expressly

admitted below.  Any factual allegation below is admitted only as to the specific admitted facts,

not as to any purported conclusions, characterizations, implications, or speculations that arguably

follow from the admitted facts.  Demandware denies that Plaintiffs are entitled to the relief

requested, or to any other relief.

## PRELIMINARY STATEMENT

Plaintiffs are notorious non-practicing patent assertion entities, commonly known as

---

[1] On July 6, 2015, the Court granted Plaintiffs' Motion to Amend Case Caption.  Dkt. No. 40 at
13.  Demandware has changed the caption accordingly, but has left other references to
ArrivalStar, S.A. and Melvino Technologies (collectively, "Plaintiffs"), unchanged throughout
its Second Amended Answer, Defenses and Counterclaims.

'patent trolls,' who have filed hundreds of meritless patent lawsuits in extortionist attempts to recover nuisance settlement payments and thereby fund their massive litigation campaign. *See, e.g.,* Ryan Davis, "ArrivalStar Tops List of Most Litigious Patent Trolls," Law360, May 13, 2014 (Exhibit A).[2] Plaintiffs' actions have significantly drained productive capital from the nation's economy and have harmed small, medium and large private business and government entities alike. *See* Fact Sheet:  White House Task Force on High-Tech Patent Issues, June 4, 2013 (attached hereto as Exhibit B).  In the President's words, patent trolls "don't actually produce anything themselves," and instead develop a business model "to essentially leverage and hijack somebody else's idea and see if they can extort some money out of them." *Id.*  This Court should see Plaintiffs' lawsuit for what it really is:  an improper shakedown attempt to extort a few thousand dollars from Demandware notwithstanding the meritless nature of Plaintiffs' baseless allegations.  This Court should *sua sponte* dismiss Plaintiffs' lawsuit, sanction Plaintiffs for their illegal and spurious allegations and award Demandware its costs and attorneys' fees.

## NATURE OF THE LAWSUIT

1.    This is an action for patent infringement of United States Patent Numbers: 6,952,645; 6,317,060; 7,400,970 and 6,904,359; arising under the patent laws of the United States, Title 35 of the United States Code.

Answer:    Demandware admits Plaintiffs have alleged that Demandware infringes United States Patent Nos. 6,952,645, 6,317,060, 7,400,970 and 6,904,359 (the "patents-in-suit"), patents that Plaintiffs purport to own.

---

[2] The exhibits referenced herein refer to the exhibits attached to Demandware's Amended Answer, Defenses and Counterclaims (Dkt. Nos. 14-1 – 14-7).

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331; 28 U.S.C.§ 1338; and 35 U.S.C. § 271.

Answer:      Demandware admits that Plaintiffs purport to state a claim under the patent laws of the United States, Title 35 of the United States Code.  In other respects, Paragraph 2 is denied.

3.      This Court has personal jurisdiction over each Defendant pursuant to, *inter alia*, Florida's long-arm statute, § 48.193, in that each Defendant:  (a) operates, conducts, engages in, and/or carries on a business or business adventure(s) in Florida and/or has an office or agency in Florida; (b) has committed one or more tortious acts within Florida; (c) was and/or is engaged in substantial and not isolated activity within Florida; and/or (d) has purposely availed itself of Florida's laws, services and/or other benefits and therefore should reasonably anticipate being hailed into one or more of the courts within the State of Florida.

Answer:      Demandware admits that this Court has personal jurisdiction over Demandware.  Demandware denies that it has committed tortious acts in this district, the state of Florida, or anywhere else in the United States.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400.

Answer:      Paragraph 4 of the Complaint states a conclusion of law regarding proper venue, to which no response is required.

## THE PLAINTIFFS

5.      ArrivalStar S.A. is a corporation organized under the laws of Luxembourg, having offices located at 67 Rue Michel, Welter L-2730, Luxembourg.  ArrivalStar is the authorized

licensee of the patents alleged as being infringed in this lawsuit, with the right to sub-license the patents at issue.

Answer: Demandware is without information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and therefore denies them.

6.     Melvino Technologies Limited is a corporation organized under the laws of the British Virgin Islands of Tortola, having offices located at P.O. Box 3174, Palm Chambers, 197 Main Street, Road Town, Tortola, British Virgin Islands. Melvino owns all rights, title and interests in the patents alleged as being infringed in this lawsuit.

Answer: Demandware is without information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint and therefore denies them.

## THE PLAINTIFFS' PATENTS

7.     Plaintiffs own all right, title and interest in, and/or have standing to sue for infringement of United States Patent Number 6,952,645 ("the '645 patent"), entitled "System and Method for Activation of an Advance Notification System for Monitoring and Reporting Status of Vehicle Travel", issued October 4, 2005. A copy of the '645 patent is attached hereto as Exhibit 1.

Answer: Demandware is without information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint and therefore denies them.

8.     Plaintiffs own all right, title and interest in, and/or have standing to sue for infringement of United States Patent Number 7,400,970 ("the '970 patent"), entitled "System and Method for an Advance Notification System for Monitoring and Reporting Proximity of a Vehicle", issued July 15, 2008. A copy of the '970 patent is attached hereto as Exhibit 2.

Answer: Demandware is without information sufficient to form a belief as to the truth of

the allegations in paragraph 8 of the Complaint and therefore denies them.

9.      Plaintiffs own all right, title and interest in, and/or have standing to sue for infringement of United States Patent Number 6,317,060 ("the '060 patent"), entitled "Base Station System and Method for Monitoring Travel of Mobile Vehicles and Communicating Notification Systems", issued November 13, 2001.  A copy of the '060 patent is attached hereto as Exhibit 3.

Answer:  Demandware is without information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint and therefore denies them.

10.     Plaintiffs own all right, title and interest in, and/or have standing to sue for infringement of United States Patent Number 6,904,359 ("the '359 patent"), entitled "Notification System and Methods with User-Defineable Notifications Based Upon Occurrence of Events", issued June 7, 2005.  A copy of the '359 patent is attached hereto as Exhibit 4.

Answer:  Demandware is without information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint and therefore denies them.

11.     The '359 patent referenced in Paragraph 10 above was the subject of an Inter Partes reexamination at the United States Patent and Trademark Office. A Reexamination Certificate was issued on May 25, 2010 and is attached hereto as Exhibit 5.

Answer:  Demandware is without information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and therefore denies them.

**THE DEFENDANT**

12.     Defendant Demandware, Inc. ("Demandware") is a Delaware Corporation with a principal place of business located at 5 Wall Street, Burlington, MA 01803. Demandware is officially authorized to transact business in Florida as a Foreign Profit Corporation, and has a

registered agent in Plantation, Florida. Demandware transacts business and has, at a minimum, offered to provide and/or has provided to customers within this Judicial District and throughout the State of Florida services that infringe claims of the '645, '970, '060 and '359 patents. Finally, Demandware has agents located and working within this Judicial District utilizing technology which infringes Plaintiffs' patents.

Answer:     Demandware admits that it is a Delaware Corporation with a principal place of business at the stated address, that it is authorized to transact business in Florida and that it transacts business in Florida.  Demandware denies the remaining allegations in paragraph 12 of the Complaint.

<u>**COUNT I – DEMANDWARE**</u>
<u>**DIRECT PATENT INFRINGEMENT**</u>

13.     Plaintiffs hereby incorporate Paragraphs 1 through 12 set forth above as if fully set forth herein.

Answer:     Demandware incorporates by reference its responses to the allegations of paragraphs 1 through 12 of the Complaint as if fully set forth herein.

14.     Pursuant to 35 U.S.C. § 271, Demandware has infringed claims of the '645, '970, '060, '359 patents through, among other activities, the commercial sale, offer and/or use of its Order Processing and Shipping Notification System and other programs/products/services/systems which utilize tracking and messaging technologies that are protected within the '645, '970, '060 and '359 patents.

Answer:     Denied.

15.     In Addition to the preceding paragraph, Demandware, Pursuant to 35 U.S.C. §271(a), has directly infringed claims of the '359, '645, '060 and '970 patents through, among other activities, products, programs, applications, functions, systems and methods, the use of

tracking and notification technologies within its **"ADVANCE SHIP NOTICE"** and

**"SHIPMENT CONFIRMATION EMAIL"** services that are protected by the '359, '645, '060

and '970 patents, as every claim limitation, or its equivalent, is found in these applications,

solutions, devices, programs, products, services, methods and/or systems.

> Answer:      Denied.

16.      Furthermore, Plaintiff would argue that a means plus function claim is present. By

way of example, claim 40 of the 359' Patent, "(a) means for permitting the user to predefine one

or more events that will cause creation and communication of the vehicle status report,

comprising....(b) means for analyzing data indicative of travel of the mobile vehicle; (c) means

for enabling initialization of communication links from the host computer system to a remote

communications device to be notified, when appropriate, based upon the predefined one or more

events and date indicative of travel; and (d) means for delivering the status report from the host

computer to the notified remote communications device during a second communication link, the

status report indicating occurrence of the one or more events."

> Answer:      Paragraph 16 of the Complaint sets forth a legal argument which Plaintiffs
> are apparently considering raising in this lawsuit.  Plaintiffs' hypothetical argument is irrelevant
> to the allegations in the Complaint and is frankly nonsensical.  Demandware cannot fairly admit
> or deny whether Plaintiffs "would argue that a means plus function claim is present."

17.      Demandware's direct infringement has injured and will continue to injure

Plaintiffs unless and until a monetary judgment is entered in favor of Plaintiffs and/or the Court

enters an injunction prohibiting further infringement and, specifically, enjoining further use of

methods and systems that come within the scope of the '645, '970, '060 and '359 patents.

> Answer:      Denied.

## <u>RESPONSE TO PLAINTIFFS' FIRST REQUEST FOR RELIEF</u>

To the extent that any response to Plaintiffs' first request for relief is required, Demandware denies that Plaintiffs have any valid claim. Demandware further denies that it has violated any of the patent laws of the United States with respect to the patents-in-suit. Demandware further denies that Plaintiffs are entitled to any relief, including that specified in Plaintiffs' first request for relief, and Demandware requests that the Court deny the relief requested by Plaintiffs.

To the extent any allegations in Count I, including any allegations purportedly contained in the title headings, have not been previously specifically admitted or denied, Demandware denies them.

### <u>COUNT II – DEMANDWARE</u><br><u>INDIRECT PATENT INFRINGEMENT</u>

18.     Plaintiffs hereby incorporate Paragraphs 1 through 12 set forth above as if fully set forth herein.

Answer:     Demandware incorporates by reference its responses to the allegations of paragraphs 1 through 18 of the Complaint as if fully set forth herein.

19.     Pursuant to 35 U.S.C. § 271, Demandware has infringed claims of the '645, '970,'060 and '359 patents through, among other activities, the commercial sale, offer and/or use of its Order Processing and Shipping Notification  System and programs/products/services/systems which utilize tracking and messaging technologies that are protected within the '645, '970, '060 and '359 patents.

Answer:     Denied.

20.     In addition to the preceding paragraph, Pursuant to 35 U.S.C. §§ 271(b) and (c), Demandware has indirectly infringed claims of the '359, '645, '060 and '970 patents through,

among other activities, products, programs, applications, functions, systems and methods, the use of tracking and notification technologies within its **"ADVANCE SHIP NOTICE"** and **"SHIPMENT CONFIRMATION EMAIL"** services that are protected by the '359, '645, '060 and '970 patents, as Demandware actively and intentionally induced infringement with knowledge that the induced acts constituted infringement, or acted with willful blindness; and/or contributed to infringement by one or more third parties as Demandware had knowledge, rather than intent, that is activity cause such infringement.

Answer:     Denied.

21.     Furthermore, Plaintiff would argue that a means plus function claim is present. By way of example, claim 40 of the 359' Patent, "(a) means for permitting the user to predefine one or more events that will cause creation and communication of the vehicle status report, comprising.(b) means for analyzing data indicative of travel of the mobile vehicle; (c) means for enabling initialization of communication links from the host computer system to a remote communications device to be notified, when appropriate, based upon the predefined one or more events and date indicative of travel; and (d) means for delivering the status report from the host computer to the notified remote communications device during a second communication link, the status report indicating occurrence of the one or more events."

Answer:     Paragraph 21 of the Complaint sets forth a legal argument which Plaintiffs are apparently considering raising in this lawsuit.  Plaintiffs' hypothetical argument is irrelevant to the allegations in the Complaint and is frankly nonsensical.  Demandware cannot fairly admit or deny whether Plaintiffs "would argue that a means plus function claim is present."

22.     Demandware's contributory infringement and/or inducement to infringe has injured and will continue to injure Plaintiffs unless and until a monetary judgment is entered in

9

favor of Plaintiffs and/or the Court enters an injunction prohibiting further infringement and, specifically, enjoining further use of methods and systems that come within the scope of the '645, '970, '060 and '359 patents.

Answer:    Denied.

### RESPONSE TO PLAINTIFFS' SECOND REQUEST FOR RELIEF

To the extent that any response to Plaintiffs' second request for relief is required, Demandware denies that Plaintiffs have any valid claim.  Demandware further denies that it has violated any of the patent laws of the United States with respect to the patents-in-suit. Demandware further denies that Plaintiffs are entitled to any relief, including that specified in Plaintiffs' second request for relief, and Demandware requests that the Court deny the relief requested by Plaintiffs.

To the extent any allegations in Count II, including any allegations purportedly contained in the title headings, have not been specifically admitted or denied, Demandware denies them.

### JURY DEMAND

Demandware hereby demands a trial by jury on all issues so triable.

### DEFENSES

Demandware incorporates the above admissions and denials in Paragraphs 1-22.  Without assuming any burden that it would not otherwise bear, and reserving its right to assert additional defenses, Demandware, for its defenses, pleads:

### FIRST DEFENSE

Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

Demandware has not engaged in any acts that would constitute infringement of any valid

10

and enforceable patent-in-suit.

### THIRD DEFENSE

The patents-in-suit are invalid for failure to comply with the statutory provisions for patentability and validity set forth in Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 101, 102, 103, 112, 115, 116 and 256, the non-statutory doctrine of double patenting, and the rules, regulations, and laws pertaining thereto.

### FOURTH DEFENSE

Plaintiffs are estopped from asserting a scope for the claims of the patents-in-suit that would cover any product made, used, sold and/or offered for sale by Demandware because of representations, arguments, and/or amendments made during prosecution of the asserted patent before the PTO.

### FIFTH DEFENSE

Plaintiffs are not entitled to any relief or recovery by reason of coming into this Court with unclean hands in seeking to enforce patents that Plaintiffs knew upon information and belief to be invalid, unenforceable, and/or not infringed.

### SIXTH DEFENSE

Plaintiffs' claims are barred by the doctrines of waiver, implied waiver, estoppel, patent misuse and fraud.

### SEVENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of laches, including, without limitation, the doctrine of prosecution laches.

### EIGHTH DEFENSE

Plaintiffs cannot recover any damages for Demandware's alleged infringement prior to

the date the Complaint was filed insofar as Plaintiffs and/or its licensees have failed to comply with the marking requirements of 35 U.S.C. § 287.

## NINTH DEFENSE

Plaintiffs are not entitled to any injunctive relief.  Plaintiffs are non-practicing patent assertion entities, and cannot meet the standards for injunctive relief set forth in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 288 (2006).

## TENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of patent exhaustion.

## ADDITIONAL DEFENSES

In addition to the foregoing defenses, Plaintiffs' claims may be subject to additional defenses and, therefore, Demandware reserves the right to add such defenses upon completion of discovery.

## DEMAND FOR JURY TRIAL

Demandware demands a trial by jury on all issues so triable.

## COUNTERCLAIMS

Counterclaimant Demandware, Inc. ("Demandware"),  upon information and belief, alleges and asserts the following counterclaims against Counterclaim Defendants  ArrivalStar S.A. ("ArrivalStar") and Melvino Technologies Limited ("Melvino") as follows:

## THE PARTIES

1.     The Defendant/Counterclaim-Plaintiff Demandware is a Delaware Corporation with United States headquarters at 5 Wall Street, Burlington, MA 01803.  Demandware also maintains a place of business at 1166 West Newport Center Drive, Suite 120, Deerfield Beach, Florida 33442.

2.      The Plaintiff/Counterclaim-Defendant, ArrivalStar  is allegedly a corporation organized under the laws of Luxembourg, having offices located at 67 Rue Michel, Welter L-2730, Luxembourg.

3.      The Plaintiff/Counterclaim- Defendant, Melvino is allegedly a corporation organized under the laws of the British Virgin Islands of Tortola, British Virgin Islands.  Upon information and belief, a British investor has provided financial backing to ArrivalStar through Melvino.

## JURISDICTION AND VENUE

4.      These counterclaims are brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq*.  The Complaint in this action alleges that Demandware has infringed the patents-in-suit, and gives rise to an actual case or controversy under 28 U.S.C. §§ 2201 and 2202.

5.      At least one counterclaim arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.

6.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1338, 2201, and 2202.

7.      This Court has personal jurisdiction over each Counterclaim-Defendant as each Counterclaim-Defendant has filed a number of lawsuits within this Court, voluntarily subjecting itself to jurisdiction within this Court.

8.      Venue for these counterclaims in this district is proper under 28 U.S.C. § 1391, as these counterclaims arise from the Plaintiffs' Complaint.

## FACTUAL BACKGROUND

9.      Upon information and belief, ArrivalStar and Melvino are non-practicing patent assertion entities (NPEs), *i.e.,* corporate entities that have no real assets, do not

13

manufacture or market any products, allegedly own a portfolio of intellectual property, including the patents-in-suit, and seek to generate license fees from a large number of alleged patent infringers by asserting patents in litigation before U.S. District Courts. Usually the proposed license amount offered by NPEs to defendants they sue is modest in comparison to the legal fees required to defend the threatened or actual lawsuit, so many entities targeted by NPEs will choose to take a license regardless of the merits of the suit.

10.     ArrivalStar and Melvino have filed over 440 patent infringement lawsuits against at least as many defendants over the past eight years, many involving the patents-in-suit; and upon information and belief, hundreds, if not thousands, of additional defendants have received threatening demands or cease and desist letters from ArrivalStar and Melvino regarding the patents-in-suit.

11.     Upon information and belief, ArrivalStar and Melvino have created a business model around knowingly filing frivolous and meritless complaints of patent infringement against businesses, municipalities and individuals with *de minimis* or no pre-filing investigation, claim chart preparation, comparison of the accused products or services to patent claims, or the like.

12.     The absence of any substantive pre-filing investigation conducted by ArrivalStar and Melvino prior to filing patent infringement complaints is evident in the copycat complaints that ArrivalStar and Melvino have filed against multiple defendants. Although ArrivalStar and Melvino are required to identify the specific device of each defendant they have sued that allegedly infringes its patents, ArrivalStar and Melvino have instead alleged that multiple defendants are infringing the patents by using the identical "tracking and notification technologies within [their] **ADVANCE SHIP NOTICE**" and **"SHIPMENT CONFIRMATION EMAIL"** services." *Compare* Demandware Compl. ¶ 15 *with, e.g.,* Alex and Ani Compl. ¶ 14 (Ex. C);

14

GolfKnickers.com Compl. ¶ 14 (Ex. D); Urban Outfitters Compl. ¶ 13 (Ex. E); L'Oreal USA Compl. ¶ 13 (Ex. F); Dollar General Compl. ¶ 13 (Ex. G).

13.     Upon information and belief, ArrivalStar and Melvino have created such a business model with the malicious intent to extort a substantial amount of money from the accused defendants as a settlement or license fee; such substantial amount of money being carefully selected by ArrivalStar and Melvino to be significantly less than the average cost of hiring an attorney to file dispositive motions and argue the same.

14.     For example, Anthony E. Dowell, an attorney who filed and managed more than 120 cases on behalf of ArrivalStar and Melvino between February 2008 and May 2013, has stated that in cases he was involved in, which represent only a fraction of the total cases ArrivalStar and Melvino have filed, he "was able to successfully license the ArrivalStar patents to over 300 companies, generating over $15 million in revenue for ArrivalStar," for an average license fee of approximately $50,000.

15.     Upon information and belief, in many instances, including the present lawsuit, ArrivalStar and Melvino have filed the Complaint for patent infringement with full and actual knowledge of non-infringement on behalf of the defendants they have targeted.

16.     On literally hundreds of occasions, ArrivalStar and Melvino have asserted patents against entities practicing technologies far afield from the patented technology. The patents-in-suit concern technology for monitoring and reporting the status of a vehicle. The purported advantages of this technology include the capability of notifying users "when an arrival of a particular vehicle at a predefined destination is imminent," and the ability to automatically process a user's request to automatically monitor a particular vehicle. Although the technology of the ArrivalStar and Melvino patents concerns methods and systems for vehicle status reporting

systems, ArrivalStar and Melvino have asserted their patents, including the patents-in-suit, against a wide swath of defendants including companies, municipalities and government agencies such as:

- Urban Outfitters

- Pizza Hut

- Dollar General

- Benjamin Moore

- Panasonic

- RadioShack

- Rawlings Sporting Goods

- The North Face

- Under Armour

- Dunkin' Brands

- GameStop

- Lululemon

- Petco Animal Supplies

- PetSmart

- Gatorade

- REI

- Toshiba

- Spanx

- Toms Shoes

- The Golf Warehouse

- LL Bean

- Seagate

- Ace Hardware

- Armani Exchange

- Rite Aid

- Tumi

- Allen Edmonds Shoe

- Hewlett Packard

- Lacoste USA

- Nautica

- The Gap

- Groupon

- Nike

- Sketchers

- City of Raleigh

- Central Puget Sound Regional Transit Authority

- Brookstone

- Coach

- Estee Lauder

- Gucci America

- Safeway

- Burlington Coat Factory

- Bed Bath & Beyond

- Gymboree

- Nordstrom

- Archer-Daniels Midland

- Chrysler

- Nissan

- Virgin America

- Oakley

- Best Buy

- Neiman-Marcus

- Kohl's Department Stores

- Dick's Sporting Goods

- Abercrombie & Fitch

- The Port Authority of New York & New Jersey

- JetBlue

- Target

- Barnes & Noble

- Brooks Brothers

- Wal-Mart

- Macy's

- US Airways

- Ford

- AT&T

- Sprint

- Massachusetts Bay Transportation Authority

- Dallas-Fort Worth International Airport

- City of Albuquerque

- City of Fairfax, Virginia

17.     ArrivalStar and Melvino's pattern and practice of asserting patents against entities that do not practice the patented technology to obtain nuisance value settlements is evident in the Complaint they have filed against Demandware.  Demandware is a software technology company headquartered in Burlington, Massachusetts that provides a cloud-based e-commerce platform and related services for retailers and brand manufacturers around the world.  Demandware does not make, use or sell any of the vehicle status reporting systems that are the subject of ArrivalStar and Melvino's patents.

18.     ArrivalStar and Melvino's pattern and practice of asserting patents against entities in the e-commerce industry is inappropriate for the additional reason that a large proportion of companies in the e-commerce industry targeted by ArrivalStar and Melvino, including Demandware's customers, ship products using carriers, such as Federal Express, that have portfolio licenses to all ArrivalStar patents.

19.     Although ArrivalStar and Melvino had actual knowledge  that Demandware does not infringe the patents-in-suit and that Demandware's customers ship and track packages through carriers, such as Federal Express, that are already licensed to ArrivalStar's patents, the Counterclaim-Defendants have maintained their efforts to misuse the patents-in-suit in efforts to impermissibly and inappropriately broaden the scope of protection afforded by the patents-in-suit in this lawsuit.

19

## COUNT I
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF
## U.S. PATENT NO. 6,952,645)

20.     Demandware repeats and re-alleges Paragraphs 1 through 19 above, as though fully set forth herein.

21.     An actual and justiciable controversy exists between Counterclaim-Defendants and Demandware concerning the noninfringement of the '645 patent.

22.     Contrary to Counterclaim-Defendants' assertions, Demandware has not directly infringed and does not directly infringe any of the claims of the '645 patent under 35 U.S.C. § 271(a) as alleged by Plaintiffs.

23.     Contrary to Counterclaim-Defendants' assertions, Demandware has not actively induced and does not actively induce the infringement of any of the claims of the '645 patent under 35 U.S.C. § 271(b) as alleged by Plaintiff.

24.     Contrary to Counterclaim-Defendants' assertions, Demandware has not contributed to and does not contribute to the infringement of any of the claims of the '645 patent under 35 U.S.C. § 271(c) as alleged by Plaintiff.

25.     Counterclaim-Defendants' actions and assertions that Demandware is infringing the '645 patent have caused, and will continue to cause, irreparable harm to Demandware. Demandware has no adequate remedy at law.

26.     Demandware is therefore entitled to a declaratory judgment that Demandware does not directly or indirectly infringe any of the claims of the '645 patent and to such further injunctive relief as may be just and proper.

## COUNT II
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF
## U.S. PATENT NO. 6,317,060)

27.     Demandware repeats and re-alleges Paragraphs 1 through 26 above, as though fully set forth herein.

28.     An actual and justiciable controversy exists between Counterclaim-Defendants and Demandware concerning the noninfringement of the '060 patent.

29.     Contrary to Counterclaim-Defendants' assertions, Demandware has not directly infringed and does not directly infringe any of the claims of the '060 patent under 35 U.S.C. § 271(a) as alleged by Plaintiffs.

30.     Contrary to Counterclaim-Defendants' assertions, Demandware has not actively induced and does not actively induce the infringement of any of the claims of the '060 patent under 35 U.S.C. § 271(b) as alleged by Plaintiff.

31.     Contrary to Counterclaim-Defendants' assertions, Demandware has not contributed to and does not contribute to the infringement of any of the claims of the '060 patent under 35 U.S.C. § 271(c) as alleged by Plaintiff.

32.     Counterclaim-Defendants' actions and assertions that Demandware is infringing the '060 patent have caused, and will continue to cause, irreparable harm to Demandware. Demandware has no adequate remedy at law.

33.     Demandware is therefore entitled to a declaratory judgment that Demandware does not directly or indirectly infringe any of the claims of the '060 patent and to such further injunctive relief as may be just and proper.

## COUNT III
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,400,970)

34.     Demandware repeats and re-alleges Paragraphs 1 through 33 above, as though fully set forth herein.

35.     An actual and justiciable controversy exists between Counterclaim-Defendants and Demandware concerning the noninfringement of the '970 patent.

36.     Contrary to Counterclaim-Defendants' assertions, Demandware has not directly infringed and does not directly infringe any of the claims of the '970 patent under 35 U.S.C. § 271(a) as alleged by Plaintiffs.

37.     Contrary to Counterclaim-Defendants' assertions, Demandware has not actively induced and does not actively induce the infringement of any of the claims of the '970 patent under 35 U.S.C. § 271(b) as alleged by Plaintiff.

38.     Contrary to Counterclaim-Defendants' assertions, Demandware has not contributed to and does not contribute to the infringement of any of the claims of the '970 patent under 35 U.S.C. § 271(c) as alleged by Plaintiff.

39.     Counterclaim-Defendants' actions and assertions that Demandware is infringing the '970 patent have caused, and will continue to cause, irreparable harm to Demandware. Demandware has no adequate remedy at law.

40.     Demandware is therefore entitled to a declaratory judgment that Demandware does not directly or indirectly infringe any of the claims of the '970 patent and to such further injunctive relief as may be just and proper.

## COUNT IV
### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,904,359)

41.     Demandware repeats and re-alleges Paragraphs 1 through 40 above, as though fully set forth herein.

42.     An actual and justiciable controversy exists between Counterclaim-Defendants and Demandware concerning the noninfringement of the '359 patent.

43.     Contrary to Counterclaim-Defendants' assertions, Demandware has not directly infringed and does not directly infringe any of the claims of the '359 patent under 35 U.S.C. § 271(a) as alleged by Plaintiffs.

44.     Contrary to Counterclaim-Defendants' assertions, Demandware has not actively induced and does not actively induce the infringement of any of the claims of the '359 patent under 35 U.S.C. § 271(b) as alleged by Plaintiff.

45.     Contrary to Counterclaim-Defendants' assertions, Demandware has not contributed to and does not contribute to the infringement of any of the claims of the '359 patent under 35 U.S.C. § 271(c) as alleged by Plaintiff.

46.     Counterclaim-Defendants' actions and assertions that Demandware is infringing the '359 patent have caused, and will continue to cause, irreparable harm to Demandware. Demandware has no adequate remedy at law.

47.     Demandware is therefore entitled to a declaratory judgment that Demandware does not directly or indirectly infringe any of the claims of the '359 patent and to such further injunctive relief as may be just and proper.

## COUNT V
## (DECLARATORY JUDGEMENT OF PATENT INVALIDITY OF
## U.S. PATENT NO. 6,952,645)

48.     Demandware incorporates the allegations set forth in paragraphs 1 through 47 above by reference as if fully set forth herein.

49.     An actual and justiciable controversy exists between Counterclaim-Defendants and Demandware concerning the invalidity of the '645 patent.

50.     Contrary to Counterclaim-Defendants' assertions, the '645 patent is invalid for failure to comply with the statutory provisions for patentability and validity set forth Title 35

of the United States Code, including one or more of 35 U.S.C. §§ 101, 102,103,112, 115, 116 and 256 and/or under the doctrine of obviousness-type double patenting.

51.     As an initial matter, the claims of the '645 patent do not constitute patentable subject matter pursuant to 35 U.S.C. § 101. The inventions asserted against Demandware claim an unpatentable abstract idea that is implemented by human beings using computers or user-communications devices. The '645 patent purports to claim the abstract idea of monitoring, comparing, and communicating with users regarding vehicle schedules, routes, and updated travel data.  Nothing in the claims, either individually, or as an ordered combination, "transform the nature of the claims" into a patent-eligible application.  *Mayo Collabortive Services v. Prometheus Labs., Inc.*, 566 U.S. 10 (2012).  Furthermore, "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

52.     Additionally, the '645 patent is invalid as anticipated pursuant to 35 U.S.C. § 102.

53.     What is more, the '645 patent is invalid as obvious pursuant to 35 U.S.C. § 103.

54.     Prior art that renders the '645 patent anticipated and/or obvious includes, but is not limited to:

- U.S. Patent No. 5,835,377 (Bush);

- U.S. Patent No. 6,006,159 (Schmier);

- Advanced Public Transportation Systems:  The State of the Art Update '92, U.S. Department of Transportation, April 1992 (Labell et al.);

- Gadget May End Lengthy Bus Waits:  Inventor's Locator Device Could Stop Bus-Stop Blues, S.F. Chron., Nov. 25, 1996 (Walker);

- Automatic Vehicle Monitoring, A Tool for Vehicle Fleet Operations, IEEE Transactions on Vehicular Technology, Vol. VT-29, No. 2 (May 1980) (Symes);

- German "Smart Bus" Systems:  Potential for Application in Portland, Oregon Volume 1 Technical Report, Office of Technical Assistance and Safety, Jan. 1993; and

- Communications and Positioning Systems in the Motor Carrier Industry, Program on Advanced Technology for the Highway, Jan. 1, 1992 (Scapinakis).

55.     Counterclaim-Defendants' actions and assertions that the '645 patent is valid and infringed by Demandware have caused, and will continue to cause, irreparable injury to Demandware.  Demandware has no adequate remedy at law.

56.     Demandware  is  therefore entitled  to a declaratory  judgment  that the claims of the '645 patent are invalid and to  such further relief as may be just and proper.

## COUNT VI
## (DECLARATORY JUDGEMENT OF PATENT INVALIDITY OF U.S. PATENT NO. 6,317,060)

57.     Demandware  incorporates  the allegations set  forth  in  paragraphs  1 through 56 above by reference as if fully set forth herein.

58.     An actual and justiciable controversy exists between Counterclaim-Defendants and Demandware concerning the invalidity of the '060 patent.

59.     Contrary to Counterclaim-Defendants' assertions, the  '060 patent is invalid  for failure  to  comply  with  the statutory provisions for patentability and validity set forth Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 101, 102,103,112, 115, 116 and 256 and/or under the doctrine of obviousness-type double patenting.

60.     As an initial matter, the claims of the '060 patent do not constitute patentable subject matter pursuant to 35 U.S.C. § 101. The inventions asserted against Demandware claim an unpatentable abstract idea that is implemented by human beings using computers or user-communications devices. The '060 patent purports to claim the abstract idea of monitoring, comparing, and communicating with users regarding vehicle schedules, routes, and updated travel

data.  Nothing in the claims, either individually, or as an ordered combination, "transform the nature of the claims" into a patent-eligible application.  *Mayo Collabortive Services v. Prometheus Labs., Inc.*, 566 U.S. 10 (2012).  Furthermore, "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

61.    Additionally, the '060 patent is invalid as anticipated pursuant to 35 U.S.C. § 102.

62.    What is more, the '060 patent is invalid as obvious pursuant to 35 U.S.C. § 103.

63.    Prior art that renders the '060 patent anticipated and/or obvious includes, but is not limited to:

- U.S. Patent No. 5,835,377 (Bush);

- U.S. Patent No. 6,006,159 (Schmier);

- Advanced Public Transportation Systems:  The State of the Art Update '92, U.S. Department of Transportation, April 1992 (Labell et al.);

- Gadget May End Lengthy Bus Waits:  Inventor's Locator Device Could Stop Bus-Stop Blues, S.F. Chron., Nov. 25, 1996 (Walker);

- Automatic Vehicle Monitoring, A Tool for Vehicle Fleet Operations, IEEE Transactions on Vehicular Technology, Vol. VT-29, No. 2 (May 1980) (Symes);

- German "Smart Bus" Systems:  Potential for Application in Portland, Oregon Volume 1 Technical Report, Office of Technical Assistance and Safety, Jan. 1993; and

- Communications and Positioning Systems in the Motor Carrier Industry, Program on Advanced Technology for the Highway, Jan. 1, 1992 (Scapinakis).

64.    Counterclaim-Defendants' actions and assertions that the '060 patent is valid and infringed by Demandware have caused, and will continue to cause, irreparable injury to Demandware.  Demandware has no adequate remedy at law.

65.    Demandware  is  therefore entitled  to a declaratory  judgment  that the claims of the '060 patent are invalid and to such further relief as may be just and proper.

<u>COUNT VII</u>
<u>(DECLARATORY JUDGEMENT OF PATENT INVALIDITY OF</u>
<u>U.S. PATENT NO. 7,400,970)</u>

66.     Demandware incorporates the allegations set forth in paragraphs 1 through 63 above by reference as if fully set forth herein.

67.     An actual and justiciable controversy exists between Counterclaim-Defendants and Demandware concerning the invalidity of the '970 patent.

68.     Contrary to Counterclaim-Defendants' assertions, the '970 patent is invalid for failure to comply with the statutory provisions for patentability and validity set forth Title 35 of the United States Code, including one or more of 35 U.S.C. §§ 101, 102,103,112, 115, 116 and 256 and/or under the doctrine of obviousness-type double patenting.

69.     As an initial matter, the claims of the '970 patent do not constitute patentable subject matter pursuant to 35 U.S.C. § 101. The inventions asserted against Demandware claim an unpatentable abstract idea that is implemented by human beings using computers or user-communications devices. The '970 patent purports to claim the abstract idea of monitoring, comparing, and communicating with users regarding vehicle schedules, routes, and updated travel data.  Nothing in the claims, either individually, or as an ordered combination, "transform the nature of the claims" into a patent-eligible application.  *Mayo Collabortive Services v. Prometheus Labs., Inc.*, 566 U.S. 10 (2012).  Furthermore, "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

70.     Additionally, the '970 patent is invalid as anticipated pursuant to 35 U.S.C. § 102.

71.     What is more, the '970 patent is invalid as obvious pursuant to 35 U.S.C. § 103.

72.     Prior art that renders the '970 patent anticipated and/or obvious includes, but is not limited to:

- U.S. Patent No. 5,835,377 (Bush);

- U.S. Patent No. 6,006,159 (Schmier);

- Advanced Public Transportation Systems:  The State of the Art Update '92, U.S. Department of Transportation, April 1992 (Labell et al.);

- Gadget May End Lengthy Bus Waits:  Inventor's Locator Device Could Stop Bus-Stop Blues, S.F. Chron., Nov. 25, 1996 (Walker);

- Automatic Vehicle Monitoring, A Tool for Vehicle Fleet Operations, IEEE Transactions on Vehicular Technology, Vol. VT-29, No. 2 (May 1980) (Symes);

- German "Smart Bus" Systems:  Potential for Application in Portland, Oregon Volume 1 Technical Report, Office of Technical Assistance and Safety, Jan. 1993; and

- Communications and Positioning Systems in the Motor Carrier Industry, Program on Advanced Technology for the Highway, Jan. 1, 1992 (Scapinakis).

73.     Counterclaim-Defendants' actions and assertions that the '970 patent is valid and infringed by Demandware have caused, and will continue to cause, irreparable injury to Demandware.  Demandware has no adequate remedy at law.

74.     Demandware is therefore entitled to a declaratory judgment that the claims of the '970 patent are invalid and to such further relief as may be just and proper.

**COUNT VIII**
**(DECLARATORY JUDGEMENT OF PATENT INVALIDITY OF**
**U.S. PATENT NO. 6,904,359)**

75.     Demandware incorporates the allegations set forth in paragraphs 1 through 74 above by reference as if fully set forth herein.

76.     An actual and justiciable controversy exists between Counterclaim-Defendants and Demandware concerning the invalidity of the '359 patent.

77.     Contrary to Counterclaim-Defendants' assertions, the '359 patent is invalid for failure to comply with the statutory provisions for patentability and validity set forth Title 35

of the United States Code, including one or more of 35 U.S.C. §§ 101, 102,103,112, 115, 116 and 256 and/or under the doctrine of obviousness-type double patenting.

78.     As an initial matter, the claims of the '359 patent do not constitute patentable subject matter pursuant to 35 U.S.C. § 101. The inventions asserted against Demandware claim an unpatentable abstract idea that is implemented by human beings using computers or user-communications devices. The '359 patent purports to claim the abstract idea of monitoring, comparing, and communicating with users regarding vehicle schedules, routes, and updated travel data.  Nothing in the claims, either individually, or as an ordered combination, "transform the nature of the claims" into a patent-eligible application.  *Mayo Collabortive Services v. Prometheus Labs., Inc.*, 566 U.S. 10 (2012).  Furthermore, "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

79.     Additionally, the '359 patent is invalid as anticipated pursuant to 35 U.S.C. § 102.  Thus, for example, the '359 patent is anticipated by U.S. Patent No. 5,938,721 (Dussell et al.) and by U.S. Patent No. 5,504,491 (Chapman).

80.     What is more, the '359 patent is invalid as obvious pursuant to 35 U.S.C. § 103.  By way of example only, Dussell in view of Advanced Traveler Aid Systems for Public Transportation, The Intelligent Transit Mobility System (ITMS): Final Report (Kikuchi et al.) renders the '359 patent obvious.  Similarly, Chapman in view of U.S. Patent No. 5,262,775 (Tamai et al.) also renders the '359 patent obvious.

81.     Additional Prior art that renders the '359 patent anticipated and/or obvious includes, but is not limited to:

- U.S. Patent No. 5,835,377 (Bush);

29

- U.S. Patent No. 6,006,159 (Schmier);

- Advanced Public Transportation Systems:  The State of the Art Update '92, U.S. Department of Transportation, April 1992 (Labell et al.);

- Gadget May End Lengthy Bus Waits:  Inventor's Locator Device Could Stop Bus-Stop Blues, S.F. Chron., Nov. 25, 1996 (Walker);

- Automatic Vehicle Monitoring, A Tool for Vehicle Fleet Operations, IEEE Transactions on Vehicular Technology, Vol. VT-29, No. 2 (May 1980) (Symes);

- German "Smart Bus" Systems:  Potential for Application in Portland, Oregon Volume 1 Technical Report, Office of Technical Assistance and Safety, Jan. 1993; and

- Communications and Positioning Systems in the Motor Carrier Industry, Program on Advanced Technology for the Highway, Jan. 1, 1992 (Scapinakis).

82.     Counterclaim-Defendants' actions and assertions that the '359 patent is valid and infringed by Demandware have caused, and will continue to cause, irreparable injury to Demandware.  Demandware has no adequate remedy at law.

83.     Demandware is therefore entitled to a declaratory judgment that the claims of the '359 patent are invalid and to such further relief as may be just and proper.

**COUNT IX**
**(COMBINATION AND CONSPIRACY IN RESTRAINT OF TRADE)**

84.     Demandware incorporates the allegations set forth in paragraphs 1 through 83 above by reference as if fully set forth herein.

85.     Upon information and belief, ArrivalStar and Melvino combined and conspired in restraint of trade to engage in a concerted effort to delay and prevent competition in the relevant market as alleged in the foregoing paragraphs, thereby perpetuating ArrivalStar and Melvino's monopoly power in the relevant market.

86.     Upon  information  and belief, the above alleged  unlawful acts of ArrivalStar and Melvino in restraint of trade had a direct and substantial effect on interstate commerce by delaying, limiting, and preventing competition.

87.     Upon  information and belief, the above-alleged acts by ArrivalStar  and  Melvino unreasonably  restrained  trade  and  completion  in  the relevant market.

88.     The  unlawful activities above constitute conspiracy and combination in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1, *et seq.*

89.     As a result of ArrivalStar and Melvino's anticompetitive conduct, Demandware is being forced to expend unjustified costs, including the costs of its legal defense.  Thus, by reason of ArrivalStar and Melvino's unlawful actions, Demandware has been, and will continue to be, injured in its business and its property.

90.     The injury Demandware has suffered as a result of the combination and conspiracy in restraint of trade constitutes antitrust injury, for which Demandware is entitled to recover treble the damages that it has sustained (including costs and attorney's fees incurred in connection  with ArrivalStar and Melvino's sham litigation).

## COUNT X
### (UNENFORCEABILITY OF U.S. PATENT NOS. 7,400,970 AND 6,904,359 FOR PROSECUTION LACHES)

91.     Demandware incorporates the allegations set forth in paragraphs 1 through 90 above by reference as if fully set forth herein.

92.     The '970 patent, which issued on July 15, 2008, and the '359 patent, which issued on June 7, 2005, both claim priority to Patent Application No. 08/063,533, filed on May 18, 1993. Following the May 1993 filing, over the course of the next fifteen years, between May 1993 and July 2008, the patentee executed a systematic strategy to delay prosecution of the patent

application, and related continuing applications in order to maintain for itself unfairly the ability to add patent claims that were broadened in an effort to cover innovations developed by others that the patentee had not contemplated at the time of the alleged invention. The patentee's unreasonable and unexplained delay in prosecution constitutes an egregious misuse of the statutory patent system.

93.     During the period of the patentee's delay in prosecution, persons in the field, including Demandware, invested in and developed technology that came into general use and was proven commercially profitable while the patentee simply stood by and awaited such developments.

94.     As a result of the patentee's delay in prosecution the applications that led to the '970 patent and the '359 patent, persons in the industry, including Demandware, were prejudiced because Demandware and others invested in, worked on, or used the claimed technology during the period of delay. Between the time when the patents were filed and the time they issued, e-commerce businesses grew from nothing into a thriving multi-billion dollar industry in which millions of packages are shipped and tracked every day. It is indisputable that thousands of individuals and entities invested in, worked on, or used the claimed technology. Demandware has thus been prejudiced by ArrivalStar's unreasonable and unexplained delay in prosecuting its patents.

95.     The '970 patent and the '359 patent are unenforceable because of prosecution laches and, in particular, ArrivalStar's unreasonable delay in prosecuting the applications that resulted in the '970 patent and the '359 patent.

## COUNT XI
## (UNFAIR AND DECEPTIVE PRACTICES IN VIOLATION OF M.G.L. Ch. 93A)

96.     Demandware incorporates the allegations set forth in paragraphs 1 through 95 above by reference as if fully set forth herein.

97.     At all times relevant to this Complaint, Demandware was engaged in trade or commerce in the Commonwealth of Massachusetts within the meaning of M.G.L. ch. 93A §§ 2 and 11.

98.     At all times relevant to this Complaint, ArrivalStar and Melvino were engaged in trade or commerce in the Commonwealth of Massachusetts within the meaning of M.G.L. ch. 93A §§ 2 and 11.  Specifically, on information and belief, ArrivalStar and Melvino's sole business is to assert claims for patent infringement against targeted entities, in the form of demand letters and complaints filed in the United States district courts.  ArrivalStar and Melvino then seek to leverage the high costs of defending against such claims in order to obtain payments, nominally designated as license fees or settlements, that are lower than the attorneys' fees and costs that would be incurred if the targeted entity were to defend the infringement claim and/or prove the asserted patents to be invalid or unenforceable.

99.     On information and belief, ArrivalStar and Melvino do not practice a single claim of any patent that they own or license, and have no substantial business or source of revenue other than the payments obtained from parties against which they assert patent infringement.

100.    ArrivalStar and Melvino have conducted business within the Commonwealth of Massachusetts, including by contacting Demandware, a Massachusetts-based technology company, and threatening to assert frivolous claims that Demandware infringes at least four patents purportedly assigned or licensed to ArrivalStar and Melvino. ArrivalStar and Melvino's unfair and deceptive business activities within Massachusetts threaten to and have actually

interfered with trade and commerce, including in the operation of Demandware's business and by forcing Demandware to seek a declaratory judgment of, among other things, patent non-infringement, invalidity and unenforceability.

101.    On December 16, 2014, ArrivalStar and Melvino, through their counsel Jason Dollard, sent a letter to Demandware accusing Demandware of infringing the '970, '645 and '359 patents.  On January 7, 2015, Demandware, responded to the letter from Mr. Dollard explaining that none of Demandware's products and services practice any of the claims of the patents cited in Mr. Dollard's letter.

102.    On January 22, 2015, Edward Turnbull of ArrivalStar sent Demandware a claim chart in which he identified the following claims as representative claims of the patents-in-suit allegedly infringed by the Demandware accused products and services:  claims 19 and 20 of the '060 patent; claim 41 of the '359 patent; and claim 1 of the '970 patent (collectively, "the representative claims").

103.    Each of the representative claims includes at least one element that requires some active step (for the representative method claims) or component of a system (for the representative apparatus claims) that is associated with a particular vehicle.  Thus, for example:

- claims 19 and 20 of the '060 patent recite methods that include the step of "storing data associated with at least one vehicle";

- claim 41 of the '359 patent describes a notification system that comprises, among other things, a means for receiving "one or more events relating to the status of the vehicle, wherein the one or more events comprises at least one of the following: distance information specified by the user that is indicative of a distance between the vehicle and the location, location information specified by the user that is indicative of a location or region that the vehicle achieves during travel, time information specified by the user that is indicative of a time for travel of the vehicle to the location, or a number of one or more stops that the vehicle accomplishes prior to arriving at the location"; and

- claim 1 of the '970 patent recites a computer based notification system that includes a "means for presenting one or more selectable options to the user, the selectable options

including at least an activation option for instigating monitoring of travel data associated with a vehicle that is delivering the package to the user."

104.    None of the accused Demandware products and services meet the above-referenced "vehicle" limitations of the representative claims.  The products and services Demandware offers do not provide Demandware customers with the ability to "monitor travel data associated with a particular vehicle," "store data associated with a particular vehicle," or receive the specified events "relating to the status of the vehicle."

105.    On January 28, 2015, Shirley Paley, Assistant General Counsel of Demandware, spoke with Mr. Turnbull and Mr. Dollard and informed them that Demandware does not infringe any ArrivalStar patent.  Ms. Paley offered to explain to Mr. Turnbull and Mr. Dollard the many reasons that Demandware does not infringe the asserted patents, but Mr. Dollard said that any such explanation would be a waste of time.  He explained that ArrivalStar had already made a decision to file a lawsuit against Demandware unless Demandware agreed to a negotiated settlement.

106.    The allegations of patent infringement asserted in the communications from ArrivalStar and Melvino on December 16, 2014 and January 22, 2015 are objectively baseless, in that no reasonable person could realistically expect to succeed on the merits of such claims.

107.    On information and belief, ArrivalStar and Melvino's infringement assertions were made in subjective bad faith, insofar as they are nothing more than an effort to leverage the high cost of defending against such claims in hopes of obtaining a payment from Demandware, to which ArrivalStar and Melvino are not legally entitled.

108.    On information and belief, ArrivalStar and Melvino are also aware that the patent claims asserted against Demandware are invalid for failure to comply with the conditions of patentability, including the requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and 112,

and for obviousness-type double-patenting, as alleged in Demandware's claims for declaratory judgment of patent invalidity.

109.    ArrivalStar and Melvino have asserted certain of the patents-in-suit against hundreds of other target entities, including by filing complaints for patent infringement against other entities in this District.

110.    ArrivalStar and Melvino's assertion of the patents-in-suit against Demandware is also part of a larger business campaign by ArrivalStar and Melvino that included efforts to delay the United States Patent and Trademark Office from considering and evaluating the patent applications, in an effort to expand the scope of the granted patent protection to reach technology and innovations conceived and developed by others, that were not contemplated by the inventor at the time of filing.

111.    ArrivalStar and Melvino's unfair and deceptive business practices, as detailed above, including their frivolous assertion of the patents-in-suit against Demandware despite knowing that the patents are invalid, unenforceable, and/or not infringed,  violates M.G.L. ch. 93A §§ 2 and 11.  ArrivalStar and Melvino's violations of M.G.L. ch. 93A §§ 2 and 11 were knowing and willful.

112.    ArrivalStar and Melvino's violations of M.G.L. ch. 93A §§ 2 and 11 have damaged Demandware, including by forcing Demandware to incur the costs and attorneys' fees necessary to defend against the frivolous threats of patent infringement by filing this action for declaratory judgment. Demandware is entitled to recover such damages, as well as enhanced damages and the costs and attorneys' fees incurred in bringing this action.

**COUNT XII**
**(BAD FAITH ASSERTION OF PATENT INFRINGEMENT IN VIOLATION OF**
**FLA. STAT. § 501.993)**

113.    Demandware incorporates the allegations set forth in paragraphs 1 through 112 above by reference as if fully set forth herein.

114.    The Florida Legislature passed Florida Statute § 501.993, entitled the "Patent Troll Prevention Act" ("Patent Troll Act"), this past session.   Florida Governor Rick Scott signed the Patent Troll Act into law on June 2, 2015 and it became effective on July 1, 2015.  The Patent Troll Act prohibits bad faith assertions of patent infringement.

115.    The statute sets forth several factors courts may consider as evidence of bad faith patent infringement, including (1) failure to set forth in the demand letter the name and address of the patent owner or assignee and factual allegations concerning the specific areas in which the target's products, services, or technology infringe or are covered by the claims in the patent; (2) failure, before sending the demand letter, to conduct an analysis comparing the claims in the patent to the target's products, services, or technology or failure to identify the specific areas in which the target's products, services, or technology were covered by the claims of the patent; (3) failure to provide the factual basis for infringement upon request; (4) the claim of patent infringement was unenforceable and the plaintiff knew or should have known of its unenforceability; (5) the claim or assertion of patent infringement is deceptive; (6) the person alleging infringement has previously filed or threatened to file one or more lawsuits based on the same or similar claim of patent infringement and the threats or lawsuits lacked the name and address of the patent owner and factual allegations of infringement in the demand letter; or (7) any other factor the court finds relevant.

116.     The Patent Troll Act creates a private right of action for persons aggrieved by a bad faith assertion of patent infringement and authorizes courts to award as remedies equitable relief, damages, costs and fees, including reasonable attorneys' fees, and punitive damages in an amount equal to $50,000 or three times the total damages, costs, and fees, whichever is greater. The bad faith assertion of patent infringement is an unfair and deceptive trade practice in Florida.

117.     Plaintiffs have asserted in bad faith, and continue to assert in bad faith, that Demandware infringes the patents-in-suit.  Plaintiffs' bad faith assertion of patent infringement violates the Patent Troll Act for several reasons.  As an initial matter, Plaintiffs failed to conduct an analysis comparing the claims in its patents to Demandware's products and services.  On January 22, 2015, Edward Turnbull of ArrivalStar sent Demandware a claim chart in which he identified the following claims as representative claims of the patents-in-suit allegedly infringed by the Demandware accused products and services: claims 19 and 20 of the '060 patent; claim 41 of the '359 patent; and claim 1 of the '970 patent (collectively, "the representative claims").  Yet none of Demandware's products and services actually practice these claims, as Plaintiffs would have discovered if they had performed an adequate investigation before sending their demand letter.

118.     Plaintiffs also failed to provide the factual basis for their assertion of patent infringement upon request.  When Shirley Paley of Demandware offered to discuss the claims in Plaintiffs' patents and explain why Demandware does not infringe those patents, Plaintiffs stated that they had already decided to sue Demandware and that discussing the matter would be a waste of time.

119.    Plaintiffs' assertion of patent infringement with respect to the '970 patent and the '359 patent also violates the Patent Troll Act because the '970 patent and the '359 patent are unenforceable because of prosecution laches.  Had Plaintiffs performed a reasonable inquiry into the legal merits of their claims before filing suit, they would have understood that their unexplained delay in prosecuting the '970 patent and the '359 patent renders them unenforceable.

120.    Additionally, Plaintiffs' assertion of patent infringement with respect to all patents-in-suit is in bad faith and in violation of the Patent Troll Act because none of the claims of the patents-in-suit constitute patentable subject matter pursuant to 35 U.S.C. § 101. The inventions asserted against Demandware claim an unpatentable abstract idea that is implemented by human beings using computers or user-communications devices. The patents-in-suit purport to claim the abstract idea of monitoring, comparing, and communicating with users regarding vehicle schedules, routes, and updated travel data.  Nothing in the claims, either individually, or as an ordered combination, "transform the nature of the claim[s]" into a patent-eligible application. *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (2012). Furthermore, "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014).

121.    Plaintiffs' bad faith assertion of patent infringement in violation of the Patent Troll Act is also evident from Plaintiffs' hundreds of baseless threats and lawsuits against targeted entities alleging the same or similar claims of infringement as the claims of infringement asserted here against Demandware. Indeed, Plaintiffs have filed more than 225 lawsuits alleging the same or similar claims of infringement in this Court alone.  Upon information and belief, these frivolous lawsuits, and the demand letters that precede them, do not substantiate the factual basis

for infringement, but instead seek only to leverage the high cost of patent litigation against the targets to obtain settlements for less money than it takes to litigate a patent infringement lawsuit.

122.    Plaintiffs' violations of the Patent Troll Act have damaged Demandware by, among other things, forcing Demandware to incur the costs and attorneys' fees necessary to defend against the frivolous threats of patent infringement.  As provided by the statute, Demandware is entitled to equitable relief, damages, costs and attorneys' fees, and punitive damages in an amount equal to $50,000 or three times the total damages, costs, and fees, whichever is greater.

## PRAYER FOR RELIEF

WHEREFORE, Demandware prays for the following relief:

A.      That Judgment be entered in favor of Demandware and against ArrivalStar and Melvino on each and every count of the Complaint and on each and every count of its Counterclaims;

B.      That Judgment be entered declaring that the accused Demandware products and services do not infringe the claims of the patents-in-suit;

C.      That Judgment be entered declaring that ArrivalStar and Melvino are equitably estopped from alleging infringement of the patents-in-suit;

D.      That Judgment be entered declaring that ArrivalStar and Melvino are precluded from obtaining injunctive relief, money damages, costs, and/or attorneys' fees for any alleged infringement by Demandware;

E.      That  Judgment be entered declaring the claims of the patents-in-suit invalid;

F.      That Judgment be entered declaring the claims of the '970 and '359 patents unenforceable;

G.      That Judgment be entered permanently enjoining and restraining ArrivalStar and Melvino, its officers, agents, servants, employees and attorneys, and all others acting for, on behalf of, or in active concert or participation with any of them, from stating, implying, or suggesting that Demandware and its products infringe the patent-in-suit;

H.      That Judgment be entered declaring that ArrivalStar and Melvino have violated Section 1 of the Sherman Antitrust Act (15 U.S.C. §§ 1) and awarding Demandware damages (including costs and reasonable attorneys' fees) and that such damages be trebled;

I.      That Judgment be entered declaring that this case is exceptional in favor of Demandware under 35 U.S.C. § 285 and that Demandware be awarded its reasonable attorneys' fees and expenses;

J.      That Demandware be awarded enhanced damages pursuant to M.G.L. ch. 93A;

K.      That Demandware be awarded punitive damages in an amount to be determined by the Court, but not less than $500,000.00, for ArrivalStar and Melvino's deliberate and willful acts;

L.      That Demandware be awarded its costs in this action;

M.      That Demandware be awarded equitable relief pursuant to The Patent Troll Act;

N.       That Demandware be awarded damages pursuant to The Patent Troll Act;

O.      That Demandware be awarded costs and fees, including reasonable attorney fees pursuant to The Patent Troll Act; and

P.      That Demandware be awarded punitive damages in an amount equal to $50,000 or three times the total damages, costs, and fees, whichever is greater pursuant to The Patent Troll Act; and

Q.     That Demandware be awarded such other and further relief as the Court may deem just and proper;

## DEMAND FOR JURY TRIAL

Demandware demands a trial by jury of all issues so triable in this action.

Respectfully submitted,

*/s/ Donald J. Freeman*
Donald J. Freeman
Florida Bar No.:  180413
FREEMAN & JONES
2475 Mercer Avenue
Suite 301
West Palm Beach, FL 33401
Tel:  561.471.4900
Fax:  561.471.4939
E-mail:  djfreemanpa@bellsouth.net
*Attorney for Defendant and Counterclaim-Plaintiff Demandware, Inc.*

Michael G. Strapp
Admitted in Massachusetts
(*pro hac vice*)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel:  617.570.1658
E-mail:  mstrapp@goodwinprocter.com

Dated: August 31, 2015

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 31, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will cause a copy to be served electronically on **Jason P. Dollard, Esq.**, at jdollard@lrevanspa.com, LESLIE ROBERT EVANS & ASSOCIATES, PA, 214 Brazilian Avenue, Suite 200, Palm Beach, Florida 33480.

*/s/ Donald J. Freeman*
Donald J. Freeman
Florida Bar No.:  180413
FREEMAN & JONES
2475 Mercer Avenue
Suite 301
West Palm Beach, FL 33401
Tel:  561.471.4900
Fax:  561.471.4939
E-mail:  djfreemanpa@bellsouth.net
*Attorney for Defendant and Counterclaim-
Plaintiff Demandware, Inc.*